# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AARON, B.[1]**, | Case No. 3:22-cv-987-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Bruce Brewer, P.O. Box 421, West Linn, OR 97068. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Amy Hawkins, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Aaron B. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

insurance benefits (DIB) and supplemental security income (SSI). For the following reasons, the

Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the

Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the

proper legal standards and the findings are supported by substantial evidence. 42 U.S.C.

§ 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial

evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of

Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must

uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable

interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of

the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v.

Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court

must consider the entire record as a whole and may not affirm simply by isolating a specific

quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A

reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely.

*Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB and SSI on December 30, 2016, alleging a disability onset date of August 26, 2015. AR 56-57. Plaintiff's date of birth is February 2, 1979, and he was 36 years old as of the alleged disability onset date. AR 56. The agency denied Plaintiff's claims both initially and upon reconsideration. AR 116, 121, 127, 130. Plaintiff requested a hearing. AR 133. Plaintiff initially appeared for a hearing before ALJ Vadim Mozyrsky on September 10, 2018. AR 28. On November 23, 2018, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 13-22. This decision was remanded by the Honorable Anna Brown in October 2020. *Aaron B. v. Comm'r of Soc. Sec. Admin.*, 2020 WL 6377206, at *8 (D. Or. Oct. 30, 2020). Judge Brown found that the ALJ only made a single error by failing to address the opinion of Rachael Postman, a nurse practitioner. *Id.* Judge Brown rejected Plaintiff's three other contentions of error by the ALJ and affirmed the ALJ's evaluation of Plaintiff's testimony, the opinion of nurse practitioner Tara O'Connor, and the testimony of a lay witnesses. *Id.* at *3-6.

On remand, the ALJ held a new administrative hearing on August 6, 2021. AR 799. The ALJ issued another unfavorable decision on September 28, 2021. AR 780-792. Plaintiff appealed the ALJ's September 2021 decision to the Appeals Council, which denied review. AR 770. This made the ALJ's September 2021 decision the final decision of the Commissioner. Plaintiff now seeks judicial review of the September 2021 decision, but challenges the three issues initially affirmed by Judge Brown. *See Aaron B.*, 2020 WL 6377206, at *3-6. Plaintiff does not raise an argument regarding the ALJ's evaluation of the opinion of Rachael Postman, N.P., the single error found by Judge Brown that required remand.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C.  The ALJ's Decision**

As a preliminary step to Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status through September 30, 2016. AR 782. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 26, 2015. AR 782-83. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, radiculopathy, post-traumatic stress disorder (PTSD), anxiety, and depression. AR 783. At step three, the ALJ determined that none of the impairments, either individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ next determined Plaintiff's Residual Functional Capacity (RFC). The ALJ found that Plaintiff could perform light work as defined in 20 CFR 404.1567(b), with the following limitations:

> [Plaintiff] can sit for 6 hours in an 8 hour day, stand or walk for 6 hours in an 8 hour day, and push and pull as much as he can carry. [Plaintiff] can frequently climb ramps or stairs, occasionally climb ladders, rope, or scaffolds and frequently stoop, kneel, crouch and crawl. In addition, [Plaintiff] is limited to simple, routine, repetitive work, limited to simple work related decisions, and can have only occasional interaction with the public."

AR 785.

At step four, the ALJ determined that Plaintiff was not capable of performing his past relevant work as a salesclerk or sales attendant. AR 790. At step five, relying on testimony of a vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 791-92. These jobs included Production Assembler (59,900 jobs in the national economy), Assembler of Electrical Accessories (38,700 jobs in the national economy), and Routing Clerk (104,800 jobs in the national economy). *Id.* Accordingly, the ALJ concluded that

Plaintiff was not disabled from the alleged onset date through September 28, 2021, the date of the ALJ's decision. AR 792.

## DISCUSSION

Plaintiff's raises the same three errors that were affirmed by Judge Brown. Plaintiff asserts that the ALJ erred: (1) by improperly rejecting Plaintiff's subjective symptom testimony; (2) by improperly discounting the nonmedical opinion of Tara O'Connor, a mental health nurse practitioner; and (3) by improperly discounting lay witness testimony. Each alleged error is addressed in turn.

### A.  Plaintiff's Testimony

#### 1.  Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical

reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

### 2. Analysis

The ALJ does not dispute that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and the ALJ made no finding of malingering. AR 786. Accordingly, the Court moves to the second step of the analysis, at which the ALJ was required to make specific, clear, and convincing findings to support his rejection of Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036. The ALJ found that Plaintiff experienced significant improvement with mental health treatment and that treatment notes document mostly intact mental functioning. AR 784-88. Regarding Plaintiff's physical impairments, the ALJ found the medical records show mostly mild abnormal objective findings that do not match the alleged severity of Plaintiff's impairments. AR 786. Plaintiff first argues that the ALJ failed to specifically identify what testimony was inconsistent with what evidence in the record. Plaintiff also argues that the reasons provided by the ALJ were not clear and convincing and supported by substantial evidence.

### a. Specificity

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592)). A court "cannot review whether the ALJ provided specific, clear,

and convincing reasons for rejecting [a claimant's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489, 494 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

Plaintiff contends that the ALJ erred in failing to identify specific aspects of the record that deviated from specific aspects of Plaintiff's testimony. The ALJ, however, did specify testimony that he found unsupported and cited portions of the record that the ALJ found not to support that testimony. The ALJ explained:

> Regarding the claimant's allegations of physical impairment, medical records confirm a history back, neck, and upper extremity

> pain and paresthesia in the settings of a remote moter vehicle
> accident, but with mostly mild abnormal objective findings that do
> not match the alleged severity of these issues. For example,
> lumbosacral x-rays in December 2016 showed mild degenerative
> disc disease at L5-S1 and mild facet hypertrophy of the lower
> lumbar spine. (Exhibit 2F/69) [AR 405].

AR 786.

### b.  Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and

persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "[E]vidence of

medical treatment successfully relieving symptoms can undermine a claim of disability."

*Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc.*

*Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled

effectively with medication are not disabling for the purpose of determining eligibility for SSI

benefits."). "Reports of 'improvement' in the context of mental health issues must be interpreted

with an understanding of the patient's overall well-being and the nature of her symptoms.

*Garrison*, 759 F.3d at 1017. A court must also consider "that improved functioning while being

treated and while limiting environmental stressors does not always mean that a claimant can

function effectively in the workplace." *Id.* "The fact that a person suffering from depression

makes some improvement does not mean that the person's impairment no longer seriously

affects his ability to function in a workplace." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th

Cir. 2014) (cleaned up).

As the Ninth Circuit explained in *Garrison*,

> It is error to reject a claimant's testimony merely because
> symptoms was and wan in the course of treatment. Cycles of
> improvement and debilitating symptoms are a common occurrence,
> and in such circumstances it is error for an ALJ to pick out a few
> isolated instances of improvement over a period of months or years

> and to treat them as a basis for concluding a claimant is capable of
> working.

*Garrison*, 759 F.3d at 1017.

The ALJ used mostly the same reasoning as he did in his first opinion, and Judge Brown

found that the ALJ did not err in discounting Plaintiff's subjective symptom testimony. *Aaron*

*B.*, 2020 WL 6377206, at *5. The ALJ considered and cited multiple treatment notes showing

that Plaintiff's depression and anxiety symptoms improved when he regularly took his

medications. AR 787-88 (citing AR 359, 364, 370-72, 374, 376, 378, 385-86, 552, 597, 599, 642,

674, 698, 1111, 1116-17, 1125, 1127). In 2017, Plaintiff began to attend therapy regularly, and

his anxiety and depression symptoms continued to decrease. AR 340, 342, 399, 586, 637, 642,

674, 723. In June 2018, Plaintiff discussed ending therapy treatment because he felt that it was

no longer needed given that he achieved his goals and felt like there was "not a lot more progress

he can make." AR 602.

The medical record remains mostly the same since Judge Brown's opinion. The ALJ

acknowledged that more recently, treatment notes show abnormal mental status examination

findings, like tremors, fidgeting, racing thoughts, depressed mood, and anxious affect, but mostly

intact mental functioning, including intact orientation, memory, and judgment. AR 788; *see also*

AR 1005, 1014, 1020, 1027-28, 1040, 1042, 1047, 1059-1061, 1064, 1068, 1071, 1088, 1101,

1109, 1111, 1114, 1117, 1120-21, 1127-28, 1144. The ALJ also noted, however, that during this

period Plaintiff was only using his mental health medications intermittently. AR 788; *see also*

AR 1020, 1028, 1031, 1035, 1042-43, 1057-58, 1064, 1088, 1111, 1116. In February 2019,

Plaintiff stopped taking all of his prescribed mental health medications. AR 1020, 1042. In

March 2019, Plaintiff stated he was taking his prescriptions, and that his anxiety "much

improved." AR 1098. In May 2019, Plaintiff reported that he was "tapering himself off most

PAGE 11 - OPINION AND ORDER

[medications]." Later in July 2019, however, Plaintiff reported that he "stopped taking his medications due to his father's concern over the amount of medication that he was taking." AR 1043. In November 2019, Plaintiff received a new assessment and medication plan and was prescribed atomoxetine to treat his ADHD and depression. AR 1021.

On March 4, 2021, Keli Dean Psy.D. conducted a consultative psychological evaluation. AR 1364-71. Dr. Dean strongly recommended Plaintiff to return to in-person therapy, receive an updated medication evaluation, and pursue further consultation with his physician to better understand any barriers his medical problems pose for employment. AR 1370. The record does not indicate that Plaintiff pursued Dr. Dean's recommendations. Dr. Dean also opined that Plaintiff had significant limitations, which the ALJ rejected as based on Plaintiff's subjective reports and unsupported by the medical record or Dr. Dean's own objective findings. AR 789. Plaintiff does not challenge the ALJ's evaluation of Dr. Dean's opinion. Given Plaintiff's improvement with mental health treatment, the ALJ did not err in rejecting Plaintiff's subjective symptom testimony on this basis.

### c.  Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your

symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. Thus, the ALJ's consideration that the objective medical evidence did not support Plaintiff's subjective testimony was a further relevant factor that supports the ALJ's conclusion.

In discounting Plaintiff's symptom testimony in both decisions, the ALJ relied on a lack of objective medical evidence supporting the severity of Plaintiff's allegations. AR 785-88. Judge Brown found that the ALJ did not err in discounting Plaintiff's subjective symptom testimony on this basis. *Aaron B.*, 2020 WL 6377206, at *5. The ALJ's analysis of the objective evidence regarding Plaintiff's physical impairments remains predominantly the same. The Court finds Judge Brown's opinion and analysis persuasive on this issue.

There is some new medical evidence not in the record for Judge Brown's opinion relating to Plaintiff's allegations of debilitating mental health symptoms. The ALJ, however, acknowledged the new medical records and cited multiple treatment notes in support of the ALJ's conclusion. AR 788. And one of Plaintiff's most recent treatment notes from March 2021 indicated that his depression was stable. AR 1006. In June 2018, Plaintiff presented as highly anxious, but cooperative and easily redirected. AR 553. His activities of daily living were within normal limits, and he was oriented with fair judgment and insight. *Id.* The ALJ's reliance on the objective medical evidence was a proper additional relevant factor on which the ALJ could evaluate and discount the purported limitations to which Plaintiff testified.

Regarding Plaintiff's allegations of physical impairment, the ALJ acknowledged that the medical records confirm a history of neck, back, and upper extremity pain and paresthesia. AR 786. The ALJ concluded, however, that the medical records also show mostly abnormal

objective findings that do not explain Plaintiff's alleged severity of pain symptoms. The ALJ

cited lumbosacral x-rays from December 2016 that showed mild degenerative disc disease at L5-

S1 and mild facet hypertrophy of the lower lumbar spine. AR 786 (citing AR 405). The ALJ also

acknowledged that Plaintiff continued to have ongoing back pain despite some relief from

treatment. AR 786. The ALJ explained, however, that in early 2017, Plaintiff's physical

symptoms improved with physical therapy and medications, and he continued to report lower

back pain with radicular symptoms and decreased sensation and muscle weakness. *Id.* The ALJ

also cited treatment notes showing Plaintiff exhibited no swelling, unassisted gait, and full

strength and range of motion. AR 786 (citing AR 1020, 1057, 1092, 1114).

The ALJ properly discounted Plaintiff's subjective symptom testimony regarding the

limiting effects of symptoms based on specific, clear, and convincing reasons. Therefore, the

ALJ did not err in evaluating Plaintiff's subjective symptom testimony.

## B.  "Other" Medical Opinion of  Tara O'Connor

### 1.  Standards

Effective March 27, 2017, the Social Security Administration amended its regulations

and SSRs relating to the evaluation of medical evidence, including the consideration of

"acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[3]

Most of these changes were effective only for claims filed after March 27, 2017. The

Administration, however, implemented revised versions of 20 C.F.R. §§ 404.1527(f)

---

[3] Among other things, the Commissioner rescinded SSR 06-03p, broadened the definition
of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse
practitioners), audiologists, and physician assistants for impairments within their licensed scope
of practice, and clarified that all medical sources, not just acceptable medical sources, can
provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902;
82 F. Reg. 8544; 82 F. Reg. 15263.

and 416.927(f) to provide "clear and comprehensive guidance" about how to consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after March 27, 2017, the revised version of 20 C.F.R. § 404.1527, § 416.927, §§ 404.1527 and 416.927 governs Plaintiff's claim.

These revised regulations incorporate the policy in SSR 06-03p of separating acceptable medical sources (licensed physicians and certain other qualified specialists) from "other" medical sources, and generally giving less deference to "other" medical sources. It also incorporates the policies of requiring the ALJ to consider "other" medical source opinions, explain the weight given to such opinions, provide sufficient analysis to allow a subsequent reviewer to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5845; *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). Because Tara O'Connor is a nurse practitioner, she is considered an "other" medical source.

**2. Analysis**

O'Connor completed a Mental Residual Functional Capacity Questionnaire on February 10, 2018. AR 331-34. In the questionnaire, O'Conner noted that she had seen Plaintiff thirteen times and found that Plaintiff suffers from PTSD. O'Connor determined that Plaintiff was markedly limited in all but one of the twenty categories on the questionnaire. AR 331-33. She further opined that Plaintiff would be absent from work at least six days per month, due to his mental impairments AR 333.

The ALJ gave little weight to O'Connor's opinion because she is not considered to be an acceptable medical source, her opinion is based on Plaintiff's subjective complaints, and her opinion is inconsistent with the medical record confirming "mostly mild to moderate psychiatric and cognitive symptoms and limitations." AR 789 (citing AR 340, 344, 359, 360, 365, 370, 371, 373, 375, 378, 381, 390, 586, 593, 599, 783-84, 787-790). The Commissioner only defends the ALJ's reasoning that O'Connor's opinion was inconsistent with the medical record.

The ALJ's current rationale for rejecting O'Connor's opinion remains mostly the same as the rationale in the original decision. AR 19-20. There are some new medical records, however, including the medical opinion from Dr. Dean, the discounting of which Plaintiff does not challenge. The ALJ acknowledged that O'Connor's opinion "is consistent with the assessment from Dr. Dean, but also appears to rely heavily on claimant's statements, which are not entirely consistent with treatment notes overall." AR 789.

Judge Brown affirmed the ALJ's reason that O'Connor's opinion was inconsistent with the medical record. *Aaron B.*, 2020 WL 6377206, at *6. This Court agrees with Judge Brown's analysis and finds that the ALJ did not err in evaluating O'Connor's opinion. Since 2016, Plaintiff experienced improvement with medication and therapy treatment. AR 374, 376, 378, 385, 552, 597, 599, 642, 674, 698, 1111, 1116-17, 1125, 1127. Plaintiff reported that he was going out with friends more, and that he "feels good." AR 369. In June 2016, Plaintiff experienced a decrease in hypervigilance and hyperarousal. AR 373. Plaintiff reported sleeping better and experiencing less nightmares. *Id.* In 2017, Plaintiff stated that his anxiety had been reduced and that he felt like he has "made progress in the past year." AR 642. In 2018, Plaintiff explained that he has been mildly depressed his whole life and that his depression "will periodically spike but for the most part stays at about a four out of ten." AR 611. As previously

discussed, Plaintiff's new medical records indicate that his mental health symptoms improved when he consistently took his medications and attended therapy and deteriorated when he stopped taking medication. AR 1020, 1031, 1036, 1042-43, 1057-58, 1064, 1088, 1111, 1116. Upon examination, Plaintiff consistently had an appropriate mood, good judgment, normal memory, and normal attention and concentration. AR 348, 350, 354, 356, 359, 365, 370, 375, 378, 386, 586, 590, 593, 599, 723, 753, 1092, 1101. All the above-described reasons are germane and valid reasons for the ALJ to reject the opinion of a nurse practitioner where the alleged onset date is before March 27, 2017.

## C.  Lay Witness Testimony

### 1.  Standards

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.").

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

### 2. Analysis

Plaintiff's friend, Erin W., completed a third-party function report. AR 259-266. She indicated on the report that Plaintiff has social anxiety and injuries that limit him from doing some tasks. AR 259. Erin noted that Plaintiff occasionally shops for food, goes out to eat with Erin weekly, and does light cleaning without excessive bending, reaching, or lifting. AR 261-63. Erin explained that when they do go out to eat together, she generally makes the plans and she "often need[s] to go meet [Plaintiff] where he is and escort him to the location." AR 263.

Erin detailed Plaintiff's impairments and stated that he has a "good amount of anxiety when it comes to other people and is scared of their intentions and actions." AR 265. She also stated, however, that Plaintiff gets along with authority figures "well enough for an appropriate exchange." AR 265. When describing Plaintiff's physical impairments, Erin stated that Plaintiff's physical injuries limit his lifting, reaching, and mobility, and that he can only lift about five pounds. AR 264. She also stated that Plaintiff must be careful and slow when bending, squatting, and kneeling. *Id.* Erin testified to no greater limitations than Plaintiff.

The ALJ rejected the lay witness statement because of its "high degree of subjectivity, and lack of medically acceptable standards." AR 790. Plaintiff argues that asserting that Erin's testimony is "subjective" is simply discounting her testimony because she is a lay witness, which is improper. Plaintiff notes that lay witnesses are by definition testifying subjectively because they are not medical witnesses relying on objective tests or examinations. The Commissioner responds that because Erin rendered specific opinions about Plaintiff's functional limitations, such as how much he could lift, his ability to squat or bend, and his memory retention, and did not simply testify about Erin's observations, the ALJ properly discounted her opinion as subjective and failing to apply medical standards. The Commissioner cites *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[M]edical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence.").

Erin did not testify as to a "medical diagnosis." Her testimony regarding Plaintiff's ability to lift, squat, bend, and kneel, and his memory retention are all subjects that are observable to a lay witness friend or family member. Social Security regulations provide that the Commissioner will consider "any information or statement(s) from a nonmedical source (including you) about *any issue* in your claim. We may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records." 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4) (emphasis added). Thus, the ALJ erred by discounting Erin's testimony because it was subjective and did not include medical standards.

Erin, however, testified to no greater limitations than did Plaintiff. Thus, regardless of whether the ALJ erred in discounting Erin's opinion, such error is harmless. *See Molina*, 674 F.3d at 1117-18; *see also Blacksher v. Berryhill*, 762 F. App'x 372, 377 (9th Cir. 2019) ("Ms. Blacksher's testimony was substantially similar to that of her son. Because the ALJ

provided clear and convincing reasons for discounting Blacksher's statements, it follows that the

ALJ also gave germane reasons for rejecting Ms. Blacksher's similar testimony, and so any error

was harmless." (quotation marks omitted)).

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 19th day of October, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge